In my judgment, the majority has grievously erred in its construction of the "juvenile court law" (Rem. Rev. Stat., § 1987-1 [P.C. § 593]), which defines what the legislature meant by the use of the term "dependent children."
There is, of course, no contention that the children here involved were delinquent children under that statute. But, at most, they were dependent children only. We have, therefore, only to read the act and from its contents learn what was the legislative intent. It is unnecessary to set forth the eighteen subdivisions containing the legislative definitions, because, whether they be read casually or with extreme care, the result is exactly the same; and that result is that, by the plainest terms, not subject to judicial construction, the legislature defined a dependent child to be one in want: In want of parental care and control; in want of proper home surroundings; in want of sustenance, *Page 387 
or one who, for want of proper care, is subjected to conditions naturally leading to idle, dissolute and immoral courses. No stretch of the imagination would permit one to say that the children here involved were subjected to anything of the several kinds mentioned in the statute.
It is true that those who had the custody and control of these children were not their natural parents or their legal guardians, but there is nothing in that which exposed the children to any of the evils enumerated in the statute. Many a foster parent has properly performed the duties of a natural parent, and a foster parent, whose rights are not challenged by one having a better legal right, will be accorded the rights and held to the duties of a natural parent by the law. In the case cited by the majority, In re Allen, 139 Wn. 130, 245 P. 919, the natural father, having voluntarily turned the child over to another who was without legal right, was held estopped from reclaiming his own child.
But, in any event, the natural father was in existence and was asserting his rights at and before the filing of the petitions under the juvenile court law and at all times since. Hence, it cannot be successfully contended that these children had no parent or guardian capable of and willing to exercise parental control.
So, here, there was absolutely no basis for involving the juvenile court law. To hold otherwise is to destroy the legislative definition of what is a dependent child, and to leave in existence no standard whatever for a judicial determination of dependency. While juvenile judges will, no doubt, act fairly and humanly, as they see the facts, yet, without a statutory standard, they can act only on their own idea of what is right, so that families may be broken up or destroyed at the whim or will of the judge presiding. *Page 388 
The decree of divorce referred to by the majority, which awarded the custody of the children to the mother, was an adjudication between the father and the mother only, and by it the father's rights were not destroyed, but were subordinated to the rights of the mother. Upon the mother's death, her rights ended and the father's rights alone remained, no longer subordinate to anything.
While his past conduct is not to be commended, yet we do find the father here seeking the custody of his children immediately after the death of the mother and the termination of her rights. He is the natural and the legal father, and his rights as such have been in no way impaired by anything which has heretofore occurred. He is entitled to the custody of his children, both under the laws of nature and the laws of this state. If, having the children in his custody, he fails in his duty to them, quite another question will be presented.
In my opinion, the judgment should be reversed, the juvenile proceedings should be dismissed, and appellant's rights should be adjudicated in the habeas corpus proceeding, as herein indicated.
For these reasons, I dissent.
MILLARD and GERAGHTY, JJ., concur with TOLMAN, J. *Page 389